IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:20-CV-124-D

| | | |
|---|---|---|
| FIRST PROTECTIVE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| LINDA RIKE, | ) ) | |
| Defendant. | ) ) | |

On September 14, 2018, Hurricane Florence damaged Linda Rike's ("Rike" or "defendant") residence in Morehead City, North Carolina. Rike notified her insurance company, First Protective Insurance Company ("First Protective" or "plaintiff"), about the loss, but the parties could not agree on what First Protective owed Rike under the policy. As part of the claims process and pursuant to a provision in the insurance policy, First Protective invoked the appraisal process and each party chose an appraiser. On March 19, 2020, each appraiser signed an Appraisal of Insurance Claim Award Form ("Appraisal Award") detailing payments due to Rike. First Protective disputes the amount in the Appraisal Award due to Rike for loss of use of the property.

On June 19, 2020, First Protective filed a complaint against Rike seeking a declaratory judgment [D.E. 1]. First Protective seeks a declaration that the Appraisal Award is invalid. See id. On July 10, 2020, Rike answered, moved to dismiss for failure to state a claim, and counterclaimed for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 ("UDTPA") [D.E. 8].

On August 13, 2020, Rike moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) [D.E. 11] and filed a memorandum in support [D.E. 12]. Rike asks the court to dismiss First Protective's declaratory judgment claim and to grant judgment on the pleadings concerning Rike's counterclaims. On September 17, 2020, First Protective responded in opposition [D.E. 17]. On September 30, 2020, Rike replied [D.E. 20]. As explained below, the court grants Rike's motion for judgment on the pleadings and dismisses First Protective's declaratory judgment claim that the Appraisal Award is invalid. The court also grants Rike's motion for judgment on the pleadings on her breach of contract counterclaim. The court denies Rike's motion for judgment on the pleadings on her counterclaim for breach of the covenant of good faith and fair dealings and her UDTPA counterclaim.

I.

First Protective issued a homeowner's insurance policy ("First Protective Policy" or "policy") covering Rike's residence in Morehead City, North Carolina, from May 18, 2018, to May 18, 2019. See Compl. [D.E. 1] 2; [D.E. 1-1]. The First Protective Policy contains a Duties After Loss provision which provides, in part:

> **SECTION I – CONDITIONS**
> . . .
> **C. Duties After Loss**
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
> . . .
> 5. Cooperate with us in the investigation of a claim;
> . . .
> 8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
> . . .
> > g. Receipts for additional living expenses incurred and records that support the fair rental value loss . . .

2

[D.E. 1-1] 25. The policy also contains an appraisal provision which provides, in part:

**SECTION I – CONDITIONS**
. . .
**F. Appraisal**
> **If you and we fail to agree on the value or amount of any item or loss,**
> **either may demand an appraisal of the loss.** In this event, each party will
> choose a competent and impartial appraiser within 20 days after receiving a
> written request from the other. The two appraisers will choose an umpire.
> If they cannot agree upon an umpire within 15 days, you or we may request
> that a choice be made by a judge of a court of record in the state where the
> "residence premises" is located. The appraisers will separately set the
> amount of loss. **If the appraisers submit a written report of an agreement**
> **to us, the amount agreed upon will be the amount of loss. If they fail to**
> **agree, they will submit their differences to the umpire. A decision**
> **agreed to by any two will set the amount of loss.** Each party will:
> 1. Pay its own appraiser; and
> 2. Bear the expenses of the appraisal and umpire equally.

Id. at 26 (emphasis added). The First Protective policy also contains a Loss Payment provision,

which provides, in part, for the following:

**SECTION I – CONDITIONS**
. . .
**J. Loss Payment**
> We will adjust all losses with you. We will pay you unless some other person
> is named in the policy or is legally entitled to receive payment. **Loss will be**
> **payable 60 days after we receive your proof of loss and:**
> > a. Reach an agreement with you;
> > b. There is an entry of a final judgment; or
> > c. **There is a filing of an appraisal award with us.**

Id. at 27 (emphasis added).

On September 15, 2018, First Protective began its loss adjustment of Rike's property when

it transmitted a Catastrophe Claim Notification. See Compl. ¶ 12; Countercl. [D.E. 8] ¶ 8. On

September 18, 2018, First Protective's estimator inspected Rike's property, established an estimate

to repair the dwelling, provided First Protective an estimate, and First Protective issued payment to

Rike under Coverage A (i.e., the dwelling). See Compl. ¶ 13; Countercl. ¶ 9. Rike did not agree

3

with First Protective's estimate. On January 9, 2019, Rike provided an estimate for repairs to the property. See Compl. ¶ 14; Countercl. ¶ 9. Due to the significant difference between the two estimates, First Protective ordered another inspection of the property, which occurred on January 24, 2019. See Compl. ¶¶ 14–15; Countercl. ¶ 9. First Protective's second estimate was still significantly lower than Rike's estimate. See Countercl. ¶ 9.

On February 17, 2019, Rike hired StormPro Public Adjusters, L.L.C. ("StormPro") to assist her with documenting and negotiating her insurance claim with First Protective. See id. ¶ 10. StormPro sent an Appointment of Public Adjuster Form to First Protective, as well as StormPro's estimate for the cost of mitigation services needed to repair the property, with the caveat that this estimate was not final and the investigation continued. See id. ¶¶ 10–11; Compl. ¶ 16. On April 9, 2019, First Protective sent StormPro a letter asking for StormPro's estimate, indicating that it had not received all documentation needed to conclude Rike's claim and noting that it had not yet received documentation of losses under Coverage B, Coverage C, or Coverage D. See Compl. ¶¶ 17–18; Countercl. ¶ 12.[1] On April 15, 2020, StormPro provided First Protective with its estimate, which contained estimates of losses under Coverage A and Coverage C. See Compl. ¶ 19; Countercl. ¶ 13. At this time, Rike had not provided documentation of losses under Coverage D. See Compl. ¶ 20.

On May 6, 2019, First Protective sent Rike (through StormPro) a Demand for Appraisal under the policy. It stated: "[First Protective h]ereby invokes the Appraisal provision under the conditions of your homeowner's insurance policy in order to resolve your entire claim in the above referenced claim. [First Protective's] demand for appraisal is based upon [First Protective's]

---

[1] Coverage A covers the dwelling. Coverage B covers other structures. Coverage C covers personal property. Coverage D covers loss of use. See [D.E. 1-1] 14–16.

4

understanding that the parties cannot agree upon the amount of your loss." [D.E. 8-2]; see Compl. ¶ 21; Countercl. ¶ 14. The letter also identified First Protective's chosen appraiser, Scott Mauldin ("Appraiser Mauldin"). See Compl. ¶ 21; Countercl. ¶ 14. On May 22, 2019, Rike notified Appraiser Mauldin that she selected John Robison ("Appraiser Robison") as her appraiser. See Compl. ¶ 23; Countercl. ¶ 15.

Over the next several months, Appraiser Robison and Appraiser Mauldin inspected Rike's property and produced their respective estimates of Rike's losses. See Compl. ¶¶ 24–25; Countercl. ¶ 16. At the time, Rike had not produced any documentation of losses under Coverage D. See Compl. ¶ 26. Appraiser Robison's estimate only contained estimates of losses under Coverage A and Coverage C. See id. ¶ 25. However, Appraiser Mauldin's estimate provided estimates of losses under Coverage A, Coverage C, and Coverage D, including a summary and breakdown as to the estimated losses under Coverage D. See Countercl. ¶ 17; [D.E. 8-3]. On March 19, 2020, Appraiser Mauldin and Appraiser Robison agreed on Rike's amount of loss. They completed and submitted an Appraisal of Insurance Claim – Award Form ("Award"), which identified the amount of loss they agreed upon under Coverage A, Coverage C, and Coverage D. The Appraisal Award expressly stated that both appraisers agreed on the value of Rike's loss under Coverage D. The Appraisal Award stated that it would be valid and binding if a majority of appraisers signed the Award, which they did. See Compl. ¶ 29; Countercl. ¶ 18.

On May 13, 2020, First Protective sent Rike a letter stating that it was paying her the appraisal amounts for Coverage A and Coverage C, but not Coverage D. See [D.E. 8-5]. Rike alleges that First Protective refused to pay Coverage D because "a claim for additional living expenses was not presented at any time before or during the appraisal until the final appraisal report with executed award was received on March 24, 2020, which was after the appraisal process was

5

concluded," and the policy requires a disagreement as to the amount of loss in order to be ripe for appraisal. Countercl. ¶ 20; [D.E. 8-5].

II.

On June 19, 2020, First Protective filed suit seeking a declaratory judgment that the Appraisal Award is invalid and not binding. See Compl. at 12. First Protective contends that because Rike never presented documentation for any item or loss under Coverage D before First Protective demanded appraisal, Rike never substantiated a loss under Coverage D. Thus, First Protective and Rike never disagreed on the value of any item or loss under Coverage D. See id. ¶¶ 42–44. First Protective also contends that Rike failed to comply with her Duties After Loss, violating a necessary condition to appraisal. See id. ¶¶ 45–48. Alternatively, First Protective alleges that the Appraisal Award is invalid due to fraud, mistake, or other impeaching circumstances because it included payments under Coverage D for loss of use which had not yet occurred. See id. ¶¶ 49–50.

Rike disagrees and makes three counterclaims. First, she alleges that First Protective breached the policy by failing to pay Rike under the Appraisal Award. See Countercl. ¶¶ 33–38. Second, she alleges that First Protective violated the covenant of good faith and fair dealing when it invoked the appraisal process only to challenge the Appraisal Award. See id. ¶¶ 39–42. Third, Rike alleges that First Protective engaged in unfair settlement practices in violation of N.C. Gen. Stat. § 58-63-15(11) thereby entitling Rike to damages under sections 75-1.1 and 75-16. See id. ¶¶ 43–51.

Rike seeks judgment on the pleadings and makes three arguments. First, Rike argues that the Appraisal Award is binding on the parties under North Carolina law because (a) the parties properly disagreed as to the value of Rike's claim such that the Appraisal Award was not premature; (b) First Protective waived its rights to object by expressly invoking and enforcing the appraisal

6

provision; and (c) First Protective failed to plausibly allege fraud, mistake, or other impeaching circumstances. See [D.E. 12] 9–18. Second, Rike argues First Protective breached the policy contract. See id. at 19–20. Third, Rike argues that First Protective engaged in unfair and deceptive trade practices. See id. at 20–24.

III.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

The same standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim. See Burbach Broad. Co., 278 F.3d at 405–06. When a court evaluates a motion for judgment on the pleadings, it must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015); Burbach Broad. Co., 278 F.3d at 406. A court must determine whether a pleading is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–70 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

7

A pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." See Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Moreover, a court need not accept a pleading's legal conclusions drawn from the facts. Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted).

In evaluating a motion for judgment on the pleadings, the court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice," such as public records. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007). In addition, a court may consider documents attached to a motion for judgment on the pleadings so long as those documents are "integral to the complaint" and authentic. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). However, the "[d]efendant cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict the complaint because [p]laintiff was not required to reply to defendant's answer, and all allegations in the answer are deemed denied." Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012) (alterations and quotations omitted); see Fed. R. Civ. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided.").

First Protective's claims and Rike's counterclaims arise under North Carolina law. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.,

8

433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Initially, the court addresses First Protective's declaratory judgment claim and Rike's motion for judgment on the pleadings concerning the contract. Under North Carolina law, interpreting a written contract is a question of law for the court. See Briggs v. Am. & Efird Mills, Inc., 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). When interpreting a written insurance policy

[T]he goal of construction is to arrive at the intent of the parties when the policy was issued. Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. . . .

9

Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299–300, 524 S.E.2d 558, 563 (2000) (quotation omitted); see Plum Props., LLC v. N.C. Farm Bureau Mut. Ins. Co., 254 N.C. App. 741, 744–45, 802 S.E.2d 173, 175 (2017); Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95. A court may only construe the policy language when the language used in the policy is ambiguous. See Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95. Courts construe ambiguities against the insurer and in favor of the insured. See id. Similarly, courts interpret coverage clauses broadly and exclusionary clauses narrowly. See Plum Props., 254 N.C. App. at 744–45, 802 S.E.2d at 175–76. Language is not ambiguous, however, "simply because the parties contend for differing meanings to be given to the language." Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95.

In order for a disagreement to trigger an appraisal provision in an insurance policy, the disagreement cannot be unilateral. See Hailey v. Auto-Owners Ins. Co., 181 N.C. App. 677, 684, 640 S.E.2d 849, 853 (2007). A bilateral or multilateral disagreement requires a "meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist." Id. at 684, 640 S.E.2d at 853–54 (citation omitted). Moreover, the insured must "substantiate the amount of loss he allegedly sustained" before the parties can disagree over loss. Id. at 687, 640 S.E.2d at 855; see Owners Ins. Co. v. S. Pines Hotel Operations LLC, No. 1:13CV8, 2013 WL 595924, at *4 (M.D.N.C. Feb. 14, 2013) (unpublished).

An insured must comply with the insurance policy's post-loss duties in order to invoke an appraisal provision. See Hailey, 181 N.C. App. at 687, 640 S.E.2d at 855. However, "it [is] only reasonable to require compliance with [post-loss] duties[] to the extent requested[] prior to invoking appraisal." Id. Therefore, compliance with post-loss duties depends on the insurer's requests. Regarding post-loss duties, "the omission of any reference to other policy provisions in the appraisal

10

clause [does] not create an ambiguity in the insurance contract." Id. at 685, 640 S.E.2d at 854 (citation omitted).

The parties construe Hailey differently. Rike argues that the Appraisal Award was not premature because (1) the parties disagreed about the amount of loss, and (2) Rike complied with her post-loss duties. See [D.E. 12] 10–13. Rike contends that Hailey requires "some meaningful exchange of information" but not "an exchange of every possible piece of information potentially available to the insured." Id. at 11. Rike also argues that, unlike in Hailey, she and First Protective engaged in a meaningful exchange of information allowing for disagreement. In support, Rike notes that parties had separate inspectors inspect the property and provide estimates of damages. First Protective then initiated a second inspection given the differences between those estimates, and Rike complied with First Protective's requests for information. See id. at 11–12. First Protective then invoked the appraisal process. In contrast, the insured in Hailey immediately invoked appraisal after disagreeing about the loss amount. See Hailey, 181 N.C. App. at 687, 640 S.E.2d at 855.

Rike also argues that she complied with her post-loss duties. See [D.E. 12] 10–13. According to Rike, First Protective never requested documentation of loss under Coverage D before invoking appraisal; therefore, Rike did not violate any post-loss duties. See id. at 12 ("[B]ased on both the express language of the Duties After Loss provision and the express holding of the North Carolina Court of Appeals in Hailey, [Rike] exchanged all required information and documentation and complied with all required post-loss obligations such that the Appraisal was not premature based on a lack of disagreement as to the value of the claim.").

First Protective responds that the policy, read as a whole, requires Rike to substantiate losses as to each coverage individually in order to create disagreement. See [D.E. 17] 4–5. According to First Protective, no disagreement exists because Rike never provided proof of loss under Coverage

11

D, leaving nothing with which First Protective could disagree. See id. at 6. First Protective also argues there was no "meaningful exchange of information" because the separate inspections evaluated property damage, while Coverage D concerns living expenses. See id. at 7.

As for post-loss duties, First Protective has not plausibly alleged that Rike did not comply with her duty to provide documentation as requested. First Protective never requested documentation of losses under Coverage D before invoking appraisal. Tellingly, the policy requires the insured to provide documentation as requested. See [D.E. 1-1] 25. Even were the court to find the language ambiguous, North Carolina law requires the court to construe ambiguities in favor of Rike. See, e.g., Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95. Therefore, the court rejects First Protective's contention about post-loss duties.

Alternatively, First Protective waived its right to challenge the Appraisal Award as premature. Under North Carolina law, "an insurer may be found to have waived a provision or condition in an insurance policy which is for its own benefit." Brandon v. Nationwide Mut. Fire Ins. Co., 301 N.C. 366, 370, 271 S.E.2d 380, 383 (1980); Lloyd v. Grain Dealers Mut. Ins. Co., 183 N.C. App. 490, 645 S.E.2d 230, 2007 WL 1599087, at *2 (2007) (unpublished); Brendle v. Shenandoah Life Ins. Co., 76 N.C. App. 271, 276, 332 S.E.2d 515, 518 (1985). Waiver is "an intentional relinquishment or abandonment of a known right or privilege." Cullen v. Valley Forge Life Ins. Co., 161 N.C. App. 570, 574, 589 S.E.2d 423, 428 (2003) (quotation omitted), overruled on other grounds by Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013); see, e.g., Clement v. Clement, 230 N.C. 636, 639, 55 S.E.2d 459, 461 (1949) (quotations omitted); Medearis v. Trs. of Meyers Park Baptist Church, 148 N.C. App. 1, 10, 558 S.E.2d 199, 206 (2001). Waiver is a "mixed question of law and fact." Hicks v. Home Sec. Life Ins. Co., 226 N.C. 614, 619, 39 S.E.2d 914, 918 (1946). When the facts are undisputed, "waiver becomes a question of law." Id.;

12

Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Jackson, No. 7:07-CV-130-D, 2009 WL 10689281, at *4 (E.D.N.C. Sept. 2, 2009) (unpublished).

To find waiver of an insurance policy provision, there must have been (1) "knowledge on the part of the insurer of the pertinent facts" and (2) "conduct thereafter inconsistent with an intention to enforce the contract." Cullen, 161 N.C. App. at 575, 589 S.E.2d at 428 (quotation omitted). "Knowledge is satisfied where knowledge of facts which the insurer has or should have had constitutes notice of whatever an inquiry would have disclosed and is binding on the insurer." Jackson, 2009 WL 10689281, at *4 (quotation omitted). Knowledge can be actual or constructive. See id. An insured need not explicitly disclose information to an insurer for the insurer to have knowledge. See id.; Cullen, 161 N.C. App. at 575, 589 S.E.2d at 428–29. Courts have found sufficient knowledge for waiver (1) where medical records indicated a melanoma but the insured failed to explicitly disclose it; (2) where an insurer received proofs of loss; and (3) where an insurer immediately hired an accounting firm to investigate the insured's business loss claim. See Brandon, 301 N.C. at 373–74, 271 S.E.2d at 385; Lloyd, 2007 WL 1599087, at *3; Cullen, 161 N.C. App. at 575, 589 S.E.2d at 428–29.

In determining whether an insurance company has waived a policy provision through conduct, courts look not to a single act, but rather "a series of acts or a course of conduct inconsistent with an intention to enforce the requirement." Brandon, 301 N.C. at 372, 271 S.E.2d at 384; see Lloyd, 2007 WL 1599087, at *2. Waiver need not be explicit, but can be implied. See, e.g., Owners Ins. Co., 2013 WL 595924, at *4; Blue Bird Cab Co. v. Am. Fid. & Cas. Co., 219 N.C. 788, 790, 15 S.E.2d 295, 301 (1941). Factors relevant to determining waiver of proof of loss include:

> whether the insurer had actual knowledge of the loss; whether the insurer customarily sent blank forms or promised to send forms, and did not; whether an agent or adjuster made representations to insured indicating that no proofs need be filed; whether the

13

insurer continued to demand a detailed inventory; whether the insurer made partial payment or otherwise indicated a recognition of liability by assurances that an adjustment would be made; and whether the insurer rejected proofs of loss without explicitly stating the deficiencies and the means by which they could be corrected.

Brandon, 301 N.C. at 372, 271 S.E.2d at 384 (citations omitted). North Carolina courts have found that insurers waived provisions where the insurer (1) negotiated payment with the insured and granted a change of beneficiary; (2) sent emails discussing relevant losses; (3) prepared estimates for the contested type of coverage among other actions; and (4) hired an accounting firm and made a settlement offer. See Owners Ins. Co., 2013 WL 595924, at *4; Brandon, 301 N.C. at 373–74, 271 S.E.2d at 385; Lloyd, 2007 WL 1599087, at *3; Cullen, 161 N.C. App. at 575, 589 S.E.2d at 428–29.

Rike contends that First Protective waived its right to argue that the Appraisal Award was premature due to lack of disagreement about Coverage D by expressly invoking and enforcing the appraisal provision itself. See [D.E. 12] 14–17. In support, Rike cites First Protective's invocation of the Appraisal provision without requesting proof of loss, statement that the Appraisal was to resolve the "entire claim," participation in the appraisal process for over a year without objection, and the appraisers' agreement to award losses under Coverage D under the Appraisal Award. See id. at 15–16. Rike cites Cullen and Owners Insurance Company as examples where courts found an insurer's course of conduct waived proof of loss. See id. at 14–15. First Protective responds that it could not waive its right to object when it lacked notice of losses under Coverage D and distinguishes this case from Owners Insurance Company and Cullen because those insurers received notice. See [D.E. 17] 8–10.

In Cullen, the parties disputed whether an insurer waived its "good health" provision when it provided health insurance coverage to a patient with a melanoma. See Cullen, 161 N.C. App. at 575, 589 S.E.2d at 428. Although the patient failed to disclose the melanoma expressly, medical

14

records submitted to the insurer revealed its existence. See id. Moreover, the insurer "negotiated plaintiff's check in payment of the subject policy's premium, received without objection a request for a change of beneficiary, and granted that request almost a month after knowledge of the pertinent facts concerning plaintiff's health." Id. The court held that the insurer waived the good health requirement because the insurer's behavior conflicted with an intent to enforce the provision. See id.

In Owners Insurance Company, the plaintiff contended it did not receive documentation of purported business losses sufficient to disagree before the appraisal. See Owners Ins. Co., 2013 WL 595924, at *3. Nonetheless, the court found that emails between the parties regarding the itemization of business income loss suggested that plaintiff "at least implicitly, agreed that all conditions precedent to appraisal were met and that the process should move forward." Id. at *4.

Cullen and Owners Insurance Company do not support First Protective's argument. Both parties agree that Rike did not provide documentation of losses under Coverage D. However, First Protective's Appraiser Mauldin included an award under Coverage D and First Protective received the Appraisal Award, which stated that losses under Coverage D had been appraised and noted the dollar amount to be awarded under Coverage D. See Compl. ¶ 29; [D.E. 8-4]. Before the Appraisal Award, First Protective's Appraiser Mauldin calculated and reported estimates for Rike's loss of use. See [D.E. 8-3] 24. On this record, Rike's failure to provide proof of loss is not determinative, and First Protective received notice of losses under Coverage D through its own Appraiser Mauldin. See, e.g., Cullen, 161 N.C. App. at 575, 589 S.E.2d at 428.

As for First Protective's conduct, First Protective invoked the appraisal provision without requesting any proof of loss under Coverage D and also stating that the Appraisal was to resolve the "entire claim." See Compl. ¶ 21; Countercl. ¶ 14. First Protective then participated in the Appraisal

15

process for over a year without objection. See Countercl. ¶ 29. Moreover, Appraiser Mauldin appraised Rike's losses under Coverage D, submitted an estimate including losses under Coverage D, and agreed with Appraiser Robison on an Appraisal Award, including and award under Coverage D. See id. ¶¶ 17–18, 20; Compl. ¶ 29. First Protective's participation without objection in the appraisal process that included Coverage D conflicts with an intent to enforce a disagreement or duties after loss requirement. Like the insurer in Brandon, First Protective, through Appraiser Mauldin, prepared an estimate for the coverage First Protective now disputes. See Brandon, 301 N.C. at 373–74, 271 S.E.2d at 384–85. Additionally, like the insurer in Lloyd, First Protective engaged in a settlement process over the coverage in question. See Lloyd, 2007 WL 1599087, at *3.

As for First Protective's claim for fraud, mistake, or other impeaching circumstances, Rike contends that First Protective fails to allege facts supporting its claim for fraud, mistake, or other impeaching circumstances. See [D.E. 12] 17. First Protective responds that the Appraisal Award's inclusion of payments under Coverage D reflects fraud, mistake, or other impeaching circumstances. See [D.E. 17] 11–12.

"If the contractual appraisal provisions are followed, an appraisal award is presumed valid and is binding absent evidence of fraud, duress, or other impeaching circumstances." Enzor v. N.C. Farm Bureau Mut. Ins. Co., 123 N.C. App. 544, 545–46, 473 S.E.2d 638, 639 (1996); see also Harleysville Mut. Ins. Co. v. Narron, 155 N.C. App. 362, 370, 574 S.E.2d 490, 495 (2002); N.C. Farm Bureau v. Harrell, 148 N.C. App. 183, 185, 557 S.E.2d 580, 581 (2001); McMillan v. State Farm Fire & Cas. Co., 93 N.C. App. 748, 751–52, 379 S.E.2d 88, 90 (1989). An appraiser's errors of law or fact "are insufficient to invalidate an award fairly and honestly made." Enzor, 123 N.C. at 546, 473 S.E.2d at 639–40. Therefore, the proper inquiry is: "(1) whether the contractual appraisal provisions were followed; and (2) if so, whether [there is] evidence sufficient to support invalidation

16

of the appraisal." Elledge v. Austin, 173 N.C. App. 756, 620 S.E.2d 32, 2005 WL 2649111, at *4 (2005) (unpublished).

A party must plead fraud or mistake with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). A party pleading a fraud claim must include "the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quotation omitted); see McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559–60 (4th Cir. 2013); United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 455–61 (4th Cir. 2013); Adkins v. Crown Auto, Inc., 488 F.3d 225, 231–32 (4th Cir. 2007); Dunn v. Borta, 369 F.3d 421, 426–34 (4th Cir. 2004); United States ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 921–22 (4th Cir. 2003).

To state a fraud claim under North Carolina law, a plaintiff must allege: "(1) [a] false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007). "[A]ny reliance on the allegedly false representations must be reasonable." Id. Whether a plaintiff reasonably relied on a defendant's representations is ordinarily a jury question "unless the facts are so clear as to permit only one conclusion." Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 350 N.C. 214, 224–25, 513 S.E.2d 320, 327 (1999) (emphasis and quotation omitted). In the context of insurance appraisals, courts generally find fraud in prejudicial or one-sided acts, such as an umpire hearing only from one

appraiser and not the other because the other received no notice of the proceedings. See Harleysville, 155 N.C. App. at 370–71, 574 S.E.2d at 495.

As for mistake, an error of law or fact, even if it exceeds the appraiser's powers, cannot "invalidate an award fairly and honestly made." Enzor, 123 N.C. at 556, 473 S.E.2d at 639–40; see also Harrell, 148 N.C. App. at 187, 557 S.E.2d at 582. For example, in Harleysville, the court refused to invalidate an award where the appraiser mistakenly included non-hurricane damage. See Harleysville, 155 N.C. App. at 371, 574 S.E.2d at 496.

As for "other impeaching circumstances," the court must consider such circumstances on a case by case basis. See Elledge, 2005 WL 2649111, at *4; Harleysville, 155 N.C. App. at 371, 574 S.E.2d at 495. Although North Carolina courts have not defined "impeaching circumstances," an "'impeaching circumstance' must, at the very least, have a bearing on the accuracy or authenticity of the appraisal." Elledge, 2005 WL 2649111, at *5; see Harleysville, 155 N.C.App. at 370–71, 574 S.E.2d at 495–96.

First Protective has failed to plausibly allege fraud, mistake, or other impeaching circumstances. As for fraud, an error of fact cannot invalidate an appraisal award so long as it was honestly and fairly made. See Harleysville, 155 N.C. App. at 370–71, 574 S.E.2d at 495–96. As for mistake, the court need not determine whether the payments for loss of use for April, May, June, and July 2020 are mistaken. Even if they are, such a mistake does not invalidate an appraisal award. See Enzor, 123 N.C. at 556, 473 S.E.2d at 639–40. Furthermore, First Protective has not plausibly alleged "other impeaching circumstances." See Elledge, 2005 WL 2649111, at *5. Accordingly, the court grants Rike's motion for judgment on the pleadings and dismisses First Protective's declaratory judgment claim that the Appraisal Award is invalid.

## IV.

## A.

As for Rike's motion for judgment on the pleadings concerning her counterclaim for breach of contract, a breach of contract claim involves two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). A breach of a contract occurs where there is "[n]on-performance[,] . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater v. Barker, 172 N.C. App. 441, 447, 617 S.E.2d 113, 117 (2005) (quotation omitted), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006); see Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished). An insurance policy is a contract, and the policy's provisions govern the rights and duties of the contracting parties. See Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990). The insured party "has the burden of bringing itself within the insuring language of the policy." Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595, 606, 630 S.E.2d 221, 229 (2006) (quotation omitted).

The parties agree that the insurance agreement is a valid contract under North Carolina law, but they dispute whether First Protective breached the contract. Rike alleges that First Protective breached the contract via the appraisal provision and the loss payment provision. See Countercl. ¶ 36; [D.E. 12] 19. First Protective responds that because the parties failed to meet the condition precedent to disagree, First Protective's duty to perform was not triggered, and it did not breach the contract. See [D.E. 17] 11–12.

19

The appraisal provision provides, inter alia, that "[i]f you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of the loss." [D.E. 1-1] 26. "If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss." Id. The loss payment provision provides, inter alia, "[w]e will pay within 60 days after the amount is finally determined." Id. at 27. "This amount may be determined by . . . the filing of an appraisal award with us." Id.

Rike complied with her duties under the policy both before and after First Protective invoked the appraisal process. First Protective failed to comply with its contractual obligations under the policy after invoking the appraisal process. During the appraisal process, First Protective's appraiser and Rike's appraiser agreed on the amount of loss (including under Coverage D) and submitted it to First Protective in the Appraisal Award. That "agreed upon" amount became "the amount of loss"under section I.F. of the policy. See id. at 26. Under section I.J., First Protective had to pay Rike "60 days after" the appraisers filed the Appraisal Award. See id. at 27. First Protective failed to do so and breached the policy. Thus, the court grants Rike's motion for judgment on the pleadings on her breach of contract counterclaim.

## B.

As for Rike's motion for judgment on the pleadings on her counterclaim for breach of the covenant of good faith and fair dealing, every contract contains "an implied covenant of good faith and fair dealing." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quotation omitted). Under the covenant, "neither party will do anything which injures the right of the other to receive the benefits of the agreement." Robinson v. Deutsche Bank Nat'l Tr. Co., No. 5:12-CV-590-F, 2013 WL 1452933, at *11 (E.D.N.C. Apr. 9, 2013) (unpublished) (quotation omitted). Where parties have executed a written contract, an action for "breach of the covenant of

20

good faith and fair dealing is part and parcel of a claim for breach of contract." McKinney v. Nationstar Mortg., LLC, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (unpublished) (alteration and quotation omitted); see Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996); Lord of Shalford v. Shelley's Jewelry, Inc., 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000), aff'd, 18 F. App'x 147 (4th Cir. 2001) (per curiam) (unpublished).

North Carolina law recognizes "a separate claim for breach of an implied covenant of good faith and fair dealing only in limited circumstances involving special relationships between parties, [such as] cases involving contracts for funeral services and insurance." Michael Brovosky Goldsmith LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 313–14 (E.D.N.C. 2019) (quotation omitted); Ada Liss Grp. (2003) v. Sara Lee Corp., No. 1:06-CV-610, 2009 WL 3241821, at *13 n.10 (M.D.N.C. Sept. 30, 2009) (unpublished), report and recommendation adopted by 2010 WL 3910433 (M.D.N.C. Apr. 27, 2010) (unpublished). "Outside such circumstances, actions for breach of good faith fail." Ada Liss Grp. (2003), 2009 WL 3241821, at *13 n.10. In the insurance context, a claim for breach of the covenant of good faith and fair dealing requires three elements: "(1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." LRP Hotels of Carolina v. Westfield Ins. Co., No. 4:13-CV-94-D, 2014 WL 5581049, at *4 (E.D.N.C. Oct. 31, 2014) (unpublished) (quotations omitted); see, e.g., Gandecha v. Metro. Prop. & Cas. Ins. Co., No. 5:13-CV-688-F, 2014 WL 4243797, at *5 (E.D.N.C. Aug. 26, 2014) (unpublished).

Legitimate and honest disagreement over the scope of coverage under an insurance contract does not amount to bad faith. Rather, "when an insurer denies a claim because of a legitimate, 'honest disagreement' as to the validity of the claim, the insurer is entitled to judgment as a matter of law because the plaintiff cannot establish bad faith or any tortious conduct on the part of the

21

insurer." Topsail Reef Homeowners Ass'n v. Zurich Specialities London, Ltd., 11 F. App'x 225, 238 (4th Cir. 2001) (per curiam) (unpublished); see Universal Underwriters Ins. Co. v. Lallier, 334 F. Supp. 3d 723, 736 (E.D.N.C. 2018). Bad faith does not encompass an "honest disagreement or innocent mistake." Lovell v. Nationwide Mut. Ins. Co., 108 N.C. App. 416, 421, 424 S.E.2d 181, 185 (1993) (quotation omitted); Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387, 396, 331 S.E.2d 148, 155 (1985). Aggravated conduct includes "fraud, malice, gross negligence, [and] insult" as well as actions denying coverage "willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." Universal Underwriters Ins., 334 F. Supp. 3d at 736 (quotation omitted); see Lovell, 108 N.C. App. at 422, 424 S.E.2d at 185; Guessford v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 918 F. Supp. 2d 453, 466 (M.D.N.C. 2013). Viewing the pleadings in the light most favorable to First Protective, the court denies Rike's motion for judgment on the pleadings on her counterclaim for breach of the covenant of good faith and fair dealing.

## C.

As for Rike's motion for judgment on the pleadings concerning her UDTPA counterclaim, N.C. Gen. Stat. § 58-63-15(11) does not include a private cause of action. Nonetheless, a plaintiff may obtain relief for violations of N.C. Gen. Stat. § 58-63-15(11) under N.C. Gen. Stat. § 75-1.1. See, e.g., Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018); Burch v. Lititz Mut. Ins. Co., No. 7:12–CV–107–FL, 2013 WL 6080191, at *8–9 (E.D.N.C. Nov. 19, 2013) (unpublished). In order to establish a prima facie case under the UDTPA, a plaintiff must show: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); see Kelly v. Georgia-Pac. LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009). "[W]hether an act or

22

practice is an unfair or deceptive practice . . . is a question of law for the court." Gray, 352 N.C. at 68, 529 S.E.2d at 681. Conduct that violates section 58-63-15(11) is an unfair and deceptive act or practice under the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Id. at 71, 529 S.E.2d at 683; Country Club of Johnston Cnty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002). Moreover, although section 58-63-15(11) requires a showing of a "frequency indicating a 'general business practice,'" a claim brought under the UDTPA does not require a frequency showing. Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 643–44 (M.D.N.C. 2002). Thus, section 58-63-15(11) provides "examples of conduct [supporting] a finding of unfair or deceptive acts or practices." Johnson, 221 F. Supp. 2d at 644 (quotation omitted).[2]

Rike claims that First Protective engaged in unfair claims settlement practices in violation of section 58-63-15(11) by:

    a. Purposely failing to act in good faith to effectuate prompt, fair and equitable settlements of claims in which liability became more than reasonably clear under the procedures set out by the Appraisal provision;

    b. Failing to acknowledge and act reasonably promptly upon communications regarding the Award and the value of loss under Coverage D;

    c. Refusing to pay the Award's amount for losses under Coverage D of the First Protective Policy despite the fact that the First Protective Policy clearly mandated that the Award was a final determination of the value of such loss;

---

    [2] Under North Carolina law, it is unclear whether "conduct that violates § 58-63-15(11) is a per se violation of § 75-1.1, or instead whether that conduct satisfies § 75-1.1's conduct requirement of an unfair or deceptive act or practice, still requiring the complainant to show that the act or practice was in or affecting commerce and proximately caused injury to the plaintiff before finding a violation of § 75-1.1." Elliott, 883 F.3d at 396 n.7. A court sitting in diversity should not create or extend public policy. See Time Warner, 506 F.3d at 315.

23

Case 4:20-cv-00124-D   Document 26   Filed 01/28/21   Page 23 of 26

practice is an unfair or deceptive practice . . . is a question of law for the court." Gray, 352 N.C. at 68, 529 S.E.2d at 681. Conduct that violates section 58-63-15(11) is an unfair and deceptive act or practice under the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Id. at 71, 529 S.E.2d at 683; Country Club of Johnston Cnty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002). Moreover, although section 58-63-15(11) requires a showing of a "frequency indicating a 'general business practice,'" a claim brought under the UDTPA does not require a frequency showing. Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 643–44 (M.D.N.C. 2002). Thus, section 58-63-15(11) provides "examples of conduct [supporting] a finding of unfair or deceptive acts or practices." Johnson, 221 F. Supp. 2d at 644 (quotation omitted).[2]

Rike claims that First Protective engaged in unfair claims settlement practices in violation of section 58-63-15(11) by:

    a. Purposely failing to act in good faith to effectuate prompt, fair and equitable settlements of claims in which liability became more than reasonably clear under the procedures set out by the Appraisal provision;

    b. Failing to acknowledge and act reasonably promptly upon communications regarding the Award and the value of loss under Coverage D;

    c. Refusing to pay the Award's amount for losses under Coverage D of the First Protective Policy despite the fact that the First Protective Policy clearly mandated that the Award was a final determination of the value of such loss;

---

    [2] Under North Carolina law, it is unclear whether "conduct that violates § 58-63-15(11) is a per se violation of § 75-1.1, or instead whether that conduct satisfies § 75-1.1's conduct requirement of an unfair or deceptive act or practice, still requiring the complainant to show that the act or practice was in or affecting commerce and proximately caused injury to the plaintiff before finding a violation of § 75-1.1." Elliott, 883 F.3d at 396 n.7. A court sitting in diversity should not create or extend public policy. See Time Warner, 506 F.3d at 315.

23

d. Failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under its policies and for resolution of those claims under the Appraisal provision(s) of its policies, including the First Protective Policy;

e. Purposely refusing to abide by its own standards and procedures for prompt investigation and adjustment of claims arising under its policies and attempting to manipulate those procedures for its own benefit;

f. Compelling the insured to institute and participate in litigation to recover amounts due by the contractually binding Award by completely refusing to pay the amount granted by the Award under Coverage D;

g. Other particulars as will be adduced through further investigation, discovery, or at trial.

Countercl. ¶¶ 43–51.

First Protective responds that material factual disputes remain as to Rike's unfair and deceptive trade practices and treble damages claims. See [D.E. 17] 12. First Protective contends that challenging whether Rike had a valid Coverage D claim was an honest contractual dispute, not an unfair settlement practice. See id. at 12–13. First Protective also contends that no aggravating circumstances are present. See id. at 13–14. Lastly, First Protective argues that violating N.C. Gen. Stat. § 58-63-15(11) does not per se violate section 75-1.1 and does not per se invoke treble damages. See id. at 14–15.

As for N.C. Gen. Stat. § 58-63-15(11)(b), Rike replies that First Protective failed to act reasonably promptly upon communication regarding the Appraisal Award and the amount of loss under Coverage D. See Countercl. ¶ 44(b). First Protective contacted Rike about the Appraisal Award six days before payment was due, but within the sixty day payment deadline. See id. ¶ 19. Rike offers no more evidence as to First Protective's actions after the Appraisal Award was finalized, or whether the timing of such actions was reasonable. That an insurer did not communicate about an award for 54 days is not enough, by itself, to show an unfair settlement practice. See, e.g., Topsail

Reef, 11 F. App'x at 233–34, 238; cf. Country Club of Johnston Cnty., 150 N.C. App. at 246–48, 563 S.E.2d at 279–80; Johnson, 221 F. Supp. 2d at 647. Thus, the court declines to grant Rike judgment on the pleadings as to whether First Protective failed to act reasonably promptly upon communication about the Appraisal Award. See, e.g., Majstorovic v. State Farm Fire & Cas. Co., No. 5:16-CV-771-D, 2018 WL 1473427, at *6 (E.D.N.C. Mar. 24, 2018) (unpublished).

As for subsection (c), Rike argues that First Protective failed to adopt and implement reasonable standards for prompt investigations arising under the appraisal provision and that First Protective failed to abide by its own standards for investigating such claims. See Countercl. ¶¶ 44(d), (e). The record, however, is insufficient to grant Rike's motion for judgment on the pleadings as to subsection (c).

As for subsections (f) and (g), Rike contends that First Protective failed to promptly settle a claim in which liability was reasonably clear and that First Protective compelled her to institute litigation to recover amounts due by refusing to pay the Appraisal Award. Rike's allegation that First Protective engaged in unfair settlement practices by compelling Rike to institute litigation lacks merit. First Protective initiated the lawsuit, not Rike. As for good faith, both parties agree that First Protective did not contact Rike about its disagreement until six days before payment was due, but that conduct, by itself, does not prove an unfair settlement practice.

Next, Rike cites Gray for the proposition that failure to timely pay a settlement violates N.C. Gen. Stat. § 58-63-15(11)(f). However, Gray does not help Rike. In Gray, the court was reviewing a jury verdict and held that the insurer's actions were sufficient to sustain a jury verdict in the insured's favor. See Gray, 352 N.C. at 73–74, 529 S.E. 2d at 684. In considering Rike's motion for judgment on the pleadings, the standard is different, and Gray is not controlling.

Finally, Rike cites <u>Murray v. Nationwide Mutual Insurance Company</u> for the proposition that where "an insurance company engages in conduct manifesting an inequitable assertion of power or position, that conduct constitutes an unfair trade practice." <u>Murray v. Nationwide Mut. Ins. Co.</u>, 123 N.C. App. 1, 9, 472 S.E.2d 358, 362 (1996); <u>see</u> <u>Gray</u>, 352 N.C. at 71, 529 S.E.2d at 681. North Carolina courts do not define "inequitable assertion of power," but rather discuss N.C. Gen. Stat. § 58-63-15(11). <u>Murray</u>, 123 N.C. App. at 9–10, 472 S.E.2d at 362–63. Viewing the pleadings in the light most favorable to First Protective, the court declines to grant Rike's motion for judgment on the pleadings on her UDTPA counterclaim.

V.

In sum, the court GRANTS in part and DENIES in part defendant's motion for judgment on the pleadings [D.E. 11]. The court GRANTS defendant's motion to dismiss plaintiff's declaratory judgment claim that the Appraisal Award is invalid and not binding, GRANTS defendant's motion for judgment on the pleadings on her breach of contract counterclaim, DENIES defendant's motion for judgment on the pleadings on her counterclaim for breach of covenant of good faith and fair dealing, and DENIES defendant's motion for judgment on the pleadings on her unfair and deceptive trade practices counterclaim. Whether the two remaining counterclaims will survive a motion for summary judgment is an issue for another day. The parties shall engage in a court-hosted settlement conference with United States Magistrate Judge James E. Gates.

SO ORDERED. This 28 day of January 2021.

Dever<br>
JAMES C. DEVER III<br>
United States District Judge